# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TODD GAMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-02310 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| CROWN CASTLE USA, INC., a ) | |
| Pennsylvania corporation, and ) | |
| VERIZON SOURCING, LLC, a ) | |
| Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Todd Gammons suffered injuries as a result of falling from a cellular tower allegedly owned by Defendant Crown Castle USA, Inc. ("Crown Castle") and leased by Defendant Verizon Sourcing, LLC ("Verizon"). In this lawsuit, Gammons advances various theories of negligence—construction negligence, premises liability, and ordinary negligence—against Crown Castle and Verizon. Before the Court are both Defendants' motions to dismiss Gammons's five-count amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons stated below, the motions are denied.

## BACKGROUND

This is Gammons's second attempt to plead negligence claims against Defendants. Gammons originally filed this lawsuit in the Circuit Court of Cook County, Illinois. The case was then removed to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity jurisdiction.[1]

---

[1] Title 28 U.S.C. § 1441(a) provides that,

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may

(*See* Defs.' Not. of Removal, Dkt. No. 1.) Crown Castle and Verizon each filed a motion to dismiss the original complaint for failure to state a claim. (Dkt. Nos. 15, 21.) The Court granted both motions and dismissed the complaint without prejudice, allowing Gammons another opportunity to attempt to state a claim. In its Memorandum Opinion and Order, the Court provided a detailed explanation of the original complaint's pleading deficiencies along with clear guidance as to what Gammons must allege to state a claim for negligence under Illinois law. (*See* Mem. Op. & Order, Dkt. No. 62.) Gammons now has filed an amended complaint in which he alleges as follows.[2]

On February 13, 2014, Gammons, an employee of P & D Antenna Service, Inc. ("P & D Antenna"), climbed a cellular tower located at 929 North Christiana Avenue in Chicago, Illinois "to perform elevated work, including services and/or maintenance." (Am. Compl. ¶¶ 1, 5 of Count I, Dkt. No. 68.) Gammons claims that as a result of Crown Castle's and Verizon's negligence, he fell from the tower. (*Id.* ¶¶ 11–12 of Count I, ¶¶ 12, 15 of Count III.) Specifically, Gammons attributes his fall to Crown Castle's and Verizon's failure to provide, or their removal of, "safety cables, safety connections and/or climbing pegs." (*Id.* ¶ 11 of Count I, ¶ 12 of Count III.) Gammons alleges that due to "the lack of fall[-]protection systems available," he was unable to secure his harness to the cell tower. (*Id.* ¶ 13 of Count I.) As a result, he fell and sustained severe and permanent injuries. (*Id.*)

---

> be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), which provides that the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

[2] For purposes of deciding the present motions, the Court accepts as true all well-pleaded factual allegations set forth in the amended complaint and views them in the light most favorable to Gammons. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

Like his original complaint, Gammons's amended complaint asserts claims for premises liability and ordinary negligence against Crown Castle (Counts I and II, respectively) and claims for construction negligence, premises liability, and ordinary negligence against Verizon (Counts III, IV, and V, respectively). In their motions to dismiss, Crown Castle and Verizon argue that Gammons has failed to remedy the deficiencies identified by the Court in dismissing his first complaint. They further argue that certain of Gammons's claims are duplicative and should be stricken as redundant.

## DISCUSSION

In its exercise of diversity jurisdiction, the Court applies the substantive law of Illinois to determine the elements that Gammons must prove to establish his claims. *See Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2002 WL 774185, at *2 (N.D. Ill. Apr. 26, 2002) (citing *Charter Oak Fire Ins. Co. v. Hedeen*, 280 F.3d 730, 735 (7th Cir. 2002)). To determine the sufficiency of Gammons's amended complaint, however, the Court looks to federal pleading standards. *See id.*

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, the Court is not bound to accept as true legal conclusions couched as factual allegations. *See id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## I.  Gammons's Claims against Crown Castle

A plaintiff bringing a negligence claim under Illinois law must establish that the defendant owed him a duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007). "Unless a duty is owed, there is no negligence." *LaFever v. Kemlite Co., a Div. of Dyrotech Indus., Inc.*, 706 N.E.2d 441, 446 (Ill. 1998) (quoting *Am. Nat'l Bank & Tr. Co. v. Nat'l Advert. Co.,* 594 N.E.2d 313, 318 (Ill. 1992)). In assessing whether a duty exists, courts generally consider the following factors: reasonable foreseeability and likelihood of the injury, the magnitude of the burden on the defendant in guarding against the injury, and the consequences of placing that burden on the defendant. *See id.*

When a plaintiff alleges he was injured by a condition on the defendant's property while on the property as an invitee, Illinois courts decide the foreseeability prong of the duty test by reference to § 343 of the Restatement (Second) of Torts. *See id.* at 447. Pursuant to § 343, a

possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if he: (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger. Restatement (Second) of Torts § 343 (1965). It is a prerequisite to premises liability that the defendant be a possessor of the land at issue—a person who is in occupation of the land with intent to control it. *Madden v. Paschen*, 916 N.E.2d 1203, 1214 (Ill. App. Ct. 2009) (citing Restatement (Second) of Torts §§ 343, 328E (1965)).

This Court identified a number of deficiencies in Gammons's original premises liability claim against Crown Castle. First, aside from the naked assertion that Crown Castle "owned, possessed, operated, [*et cetera*]" the cell tower, Gammons pleaded no facts to show that Crown Castle was a "possessor" as defined above. The amended complaint still does not explain in clear terms Crown Castle's (or Verizon's) interest in, occupation of, or control over the cell tower and surrounding premises. Gammons again uses the same "owned, possessed, operated, [*et cetera*]" language as contained in the original complaint. (*See, e.g.*, Am. Compl. ¶ 1 of Count I, ¶ 1 of Count IV, Dkt. No. 68.) Elsewhere in the amended complaint, however, Gammons alleges that the tower is owned by Crown Castle and leased by Verizon. (*Id.* ¶ 1.) He further alleges that Crown Castle is the owner and controller of the premises and cell tower while Verizon is the owner and controller of certain portions of the tower. (*Id.* ¶ 4 of Count I, ¶ 4 of Count IV.) Although not a model of clarity, these allegations allow the reasonable inference that both Crown Castle and Verizon meet the definition of "possessor" for purposes of premises liability.[3]

---

[3] Verizon argues that its lease with Crown Castle makes clear that it does not own or control the tower itself or the land on which it is located but merely leases spaced located on the tower. But if that space is

In addition, Gammons's original complaint did not contain any facts, as opposed to legal conclusions, to show that Crown Castle knew or should have known of the allegedly dangerous condition of the cell tower, should have realized that that condition posed an unreasonable risk of harm, or should have expected that invitees such as Gammons would not realize the danger or would fail to protect themselves against it. (*See* Mem. Op. & Order at 5, Dkt. No. 62.) In an effort to overcome those deficiencies, Gammons has included the following allegations in his amended complaint:

> Crown Castle contracted with P & D Antenna to perform elevated work on the cell tower and thus knew or should have known that individuals would be performing said work. (*See* Am. Compl. ¶¶ 4, 6 of Count I, Dkt. No. 68.)
>
> Crown Castle knew or should have known that individuals performing said work would be required to climb the tower and would be unprotected from a fall and exposed to a dangerous condition if they were required to do so without the use of safety cables, safety connections, or climbing pegs. (*See id.* ¶¶ 6–7 of Count I.)
>
> Crown Castle knew or should have known that omitting or removing such safety equipment would make the tower difficult and dangerous to climb and could cause injury to individuals performing said work. (*See id.* ¶¶ 8–9 of Count I.)
>
> Crown Castle knew or should have known that Gammons would be exposed to an unreasonably dangerous condition, and it was reasonably foreseeable that Gammons would proceed to encounter that danger in furtherance of his job duties in order to continue his employment. (*See id.* ¶ 10 of Count I.)

According to the amended complaint, then, Crown Castle should have foreseen that Gammons would fail to protect himself against the dangerous condition of the tower, by proceeding to climb it without the proper safety equipment, in order to keep his job. Therefore, Crown Castle had a duty to guard against that danger. Crown Castle, on the other hand, argues that it should not be liable for Gammons's unreasonable decision to encounter the open and obvious risk of climbing the cell tower without safety equipment.

---

the premises on which Gammons was injured, and Verizon possesses and controls that space through its lease with Crown Castle, it is plausible that Verizon is a possessor for purposes of premises liability.

Generally, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *LaFever*, 706 N.E.2d at 447 (quoting Restatement (Second) of Torts § 343A(1) (1965)).[4] "[H]arm may be reasonably anticipated when the possessor 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" *Id.* at 448 (quoting Restatement (Second) of Torts § 343A cmt. f (1965)).[5] The question is thus whether Crown Castle could have reasonably foreseen that Gammons would risk climbing the cell tower without fall-protection gear because it was necessary for him to fulfill his employment obligations. *See id.*

Illinois courts have recognized that "individuals will make deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of a property." *Atchley v. Univ. of Chi. Med. Ctr.*, 64 N.E.3d 781, 791 (Ill. App. Ct. 2016) (quoting *Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 648 (Ill. App. Ct. 2010)). *See also Lucasey v. Plattner*, 28 N.E.3d 1046, 1057 (Ill. App. Ct. 2015) (noting that the deliberate-encounter exception has most often been applied in cases involving some economic compulsion, such as where workers are compelled to encounter dangerous conditions as

---

[4] This is known as the open-and-obvious doctrine. *See, e.g., Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996); *see also Bezanis v. Fox Waterway Agency*, 967 N.E.2d 393, 399 (Ill. App. Ct. 2012) (the open-and-obvious doctrine is an exception to the general duty of care owed by a landowner and in Illinois is based on § 343A(1) of the Restatement (Second) of Torts). Gammons contends that the open-and-obvious doctrine is an affirmative defense that he is not required to rebut at the motion to dismiss stage. But, as noted in this Court's prior memorandum opinion and order, "the open-and-obvious doctrine, along with its exceptions, is simply a means to assist in analyzing the foreseeability and the likelihood of injury [factors of premises liability.]" *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 523 (Ill. App. Ct. 2010).

[5] This is known as the deliberate-encounter exception to the open-and-obvious doctrine. *See, e.g., LaFever*, 706 N.E.2d at 448.

part of their employment obligations, and the cases in which courts have applied the exception almost always involve a plaintiff forced to make a choice between either facing the danger or neglecting his duties); *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 472 (7th Cir. 1988) (noting that, "[if Plaintiff] acted in the face of an obvious danger, it cannot be said as a matter of law that he acted unreasonably since his only other choice was to forego his assigned [employment] duties.").[6]

There are no detailed factual allegations in the amended complaint to suggest why Crown Castle should have foreseen that Gammons would feel it necessary to risk severe and permanent injury to maintain his employment.[7] But detailed factual allegations are not required at the motion to dismiss stage. Gammons alleges that Crown Castle (1) hired P & D Antenna to perform elevated work on the cell tower and therefore knew that such work was going to be performed; (2) failed to provide the necessary safety equipment for such work and therefore knew or should have known that the tower was in an unreasonably dangerous condition; and (3) should have known that individuals working on the tower would choose to encounter that danger to perform their employment duties. Although it is a close call, these allegations plausibly suggest that Crown Castle should have foreseen that individuals like Gammons would proceed to climb the tower despite the lack of fall-protection equipment. Whether Crown Castle in fact did anticipate or should have anticipated that danger will turn on facts to be explored through the discovery process. Of course, Gammons will face a much higher hurdle on this point at the summary

---

[6] Illinois courts have noted that the deliberate-encounter exception focuses on what the landowner anticipates or should anticipate the entrant will do. *See, e.g., Kleiber*, 942 N.E.2d at 648; *see also LaFever*, 706 N.E.2d at 448 (explaining that courts adjudge foreseeability from the perspective of what the landowner may reasonably expect, not by measuring the reasonableness of the entrant's actions).

[7] Verizon notes that there is no allegation that Gammons would have lost his job had he refused to climb the tower without safety equipment. But "[t]he deliberate encounter exception does not require a plaintiff to furnish proof of an actual threat of termination if the danger is not encountered." *Staples v. Krack Corp*, 186 F.3d 977, 980 (7th Cir. 1999).

judgment stage, which, incidentally, is the stage at which most of the relevant cases cited by Crown Castle were decided. *See, e.g., Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 973–74 (7th Cir. 2011).

This does not end the inquiry, however. *See LaFever*, 706 N.E.2d at 450 ("Our finding that a landowner may reasonably be expected in certain instances to predict that an invitee may suffer harm from an open and obvious danger is conclusive only of the possessor's duty, and then only partially so, since foreseeability alone is not determinative of duty."); *see also Atchley*, 64 N.E.3d at 791 ("[T]he existence of an open and obvious dangerous condition affects the first two factors relevant to assessing duty: the reasonable foreseeability and likelihood of the injury."). The Court still must consider the remaining duty factors: the magnitude of the burden on the defendant in guarding against the injury and the consequences of placing that burden on the defendant. *See, e.g., Swearingen*, 662 F.3d at 973 ("Regardless of whether the general rule, the open-and-obvious doctrine, or the deliberate-encounter exception applies, the Illinois Supreme Court has applied the four-factor duty inquiry[.]"). Those factors apply equally to Gammons's ordinary negligence claim against Crown Castle.

In his original complaint, Gammons did not plead any facts from which the Court could reasonably infer that Crown Castle owed him a duty of ordinary care, that Crown Castle's alleged failure to provide safety equipment constituted a breach of that duty, or that such failure was a direct and proximate cause of his fall. (*See* Mem. Op. & Order at 6, Dkt. No. 62.) As the Court explained in dismissing the original complaint:

> Gammons d[id] not allege why it was Crown Castle's duty to install or provide climbing pegs, safety cables, or safety connections—say, as opposed to the duty of his employer, P & D [Antenna]. Nor d[id] he shed any light on the circumstances of his fall; the Court [wa]s left to speculate as to how the lack of climbing pegs or safety equipment caused him to fall or, alternatively, if there was some other cause of his fall, how the lack of equipment caused his injuries.

9

(*Id.* at 6–7.) With respect to the latter point, Gammons alleges in his amended complaint that due to the lack of fall-protection equipment, he was unable to secure his harness to the cell tower, which caused him to fall. (*See, e.g.,* Am. Compl. ¶ 14 of Count II, Dkt. No. 68.) While that allegation does not completely clarify the circumstances of Gammons's fall, it plausibly suggests that the fall was a result of Crown Castle's (or Verizon's) alleged failure to provide safety equipment, and thereby adequately addresses the causation element of his negligence claims.

With respect to duty, Gammons's original complaint did not contain any allegations from which it could be reasonably inferred that Crown Castle owed him the duty to provide fall-protection gear or to otherwise prevent his injuries. (*See* Mem. Op. & Order at 8, Dkt. No. 62.) In dismissing that complaint, the Court noted that it might have reached a different conclusion if Gammons had alleged that in his line of work, it is customary for the owner or controller of the cell tower to install climbing pegs or to provide safety equipment to individuals performing services or maintenance, or even that, as the owner of the premises, Crown Castle was required to provide safety equipment to individuals servicing the tower. (*Id.* at 8–9.) Gammons's amended complaint includes the following allegations almost exactly along those lines:

> Crown Castle knew or should have known of common industry practices regarding fall[-]protection systems, whereby safety cables, safety connections, and/or climbing pegs are to be present on its tower to prevent falls of the individuals it hires to perform elevated work on the tower. (*See* Am. Compl. ¶ 6 of Count II, Dkt. No. 68.)

> It is customary for the owner and/or controller of the cellular tower to install and/or maintain fall[-]protection systems, including safety cables, safety connections, and/or climbing pegs for individuals performing elevated work on the tower. (*See id.* ¶ 7 of Count II.)

> It is the duty of the owner and/or controller of the cellular tower to maintain its tower in a reasonably safe manner such that individuals performing elevated work on the tower are not exposed to injury, and to maintain safety cables, safety connections, and/or climbing pegs for such individuals. (*See id.* ¶ 8 of Count II.)

These allegations—however parroting of the Court's memorandum opinion they may be—must be accepted as true. There is nothing in Defendants' briefs to suggest that industry practice is otherwise and, even if there were, this is a question of fact inappropriate to be decided at the motion to dismiss stage. While industry customs and practices are not necessarily dispositive, Gammons's allegations make it plausible that the remaining factors in the duty analysis weigh in his favor. The actual magnitude of the burden and the consequences of placing it on Crown Castle or Verizon cannot be decided at this juncture without any discovery.[8]

Gammons's amended complaint remedies the deficiencies identified with respect to his original claims against Crown Castle and therefore both of those claims survive. Contrary to Crown Castle's position, "Illinois law recognizes a claim for premises liability that is separate from ordinary negligence." *Gutterman v. Target Corp.*, No. 15 C 5714, 2016 WL 397377, at *1 (N.D. Ill. Feb. 2, 2016) (noting that courts have recognized the independence of these two claims and have highlighted the different elements required to prove each one, but have not indicated that alleging them together is duplicative or prohibited, in holding that the plaintiff had sufficiently

---

[8] Crown Castle contends that if it were obligated to provide safety equipment on the cell tower permanently, the general population would be able to climb the tower, putting them in danger and thereby necessitating around-the-clock security. Crown Castle further contends that it would also have to instruct and supervise non-employees like Gammons when using the equipment. These contentions need not be grappled with at the motion to dismiss stage. First, Gammons does not necessarily suggest that fall-protection gear must be permanently affixed to, or located on, the tower. Nor is it clear that the general public would in fact have access to the tower. Second, while the question of whether a duty is owed is a question of law, it is not necessarily a question that can be decided at the motion to dismiss stage. Questions of law often implicate questions of fact, and the magnitude of the burden in negligence cases is a prime example. Notably, the cases that Crown Castle would have the Court follow in concluding that the magnitude of the burden here militates against imposing the proposed duty were decided at the summary judgment stage. *See, e.g.*, *Buerkett v. Ill. Power Co.*, 893 N.E.2d 702 (Ill. App. Ct. 2008); *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969 (7th Cir. 2011). At this stage, Gammons has made a plausible case that Crown Castle owed him a duty, and that is all that is required.

pleaded negligence and premises liability as alternative claims for relief). The Court thus declines to strike Count I as duplicative of Count II as urged by Crown Castle.[9]

## II. Gammons's Claims against Verizon

Gammons's allegations in support of his claims for premises liability and ordinary negligence against Verizon—Counts IV and V, respectively—mirror his allegations against Crown Castle and therefore suffice for the reasons discussed above.[10] In Count III, Gammons asserts a construction negligence claim against Verizon. Under Illinois law, "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 956 (7th Cir. 2007) (citing Restatement (Second) of Torts § 414 (1965)).[11] It is not enough that a defendant has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations, or to prescribe alterations and deviations. *See Bokodi v. Foster Wheeler Robbins, Inc.*, 728 N.E.2d 726, 732 (Ill. App. Ct. 2000) (citing Restatement (Second) of Torts §

---

[9] In its memorandum in support of its motion to dismiss, Verizon states that, to the extent this Court declines to dismiss the entirety of Gammons's amended complaint, Verizon joins Crown Castle's argument that the counts against it are duplicative. Because construction negligence too is an independent cause of action under Illinois law, that argument is rejected. *See Clifford v. Wharton Bus. Grp., L.L.C.*, 817 N.E.2d 1207, 1213–14 (Ill. App. Ct. 2004) (clarifying that §§ 343 and 414 of the Restatement (Second) of Torts, governing premises liability and construction negligence, respectively, "are not mutually exclusive; rather each one offers an independent basis for recovery").

[10] In addition to arguments for dismissal similar to those made by Crown Castle, Verizon argues that Gammons's negligence claims fail because it is not foreseeable that for people like Gammons— professional repair technicians with specialized training and their own equipment—the absence of fall-protection gear poses an unreasonable risk of harm. But that argument assumes certain facts (*i.e.*, that Gammons had specialized training and his own equipment) and thus does not win the day at the pleading stage.

[11] This is known as the "retained-control" exception to the general rule that a party that entrusts work to an independent contractor is not liable for that contractor's acts or omissions. *See Wilfong*, 930 N.E.2d at 526.

414 cmt. c (1965)). Rather, the defendant must retain a right of supervision such that the contractor is not entirely free to do the work in his own way. *Id.*

Count III of Gammons's original complaint contained boilerplate allegations that merely tracked the elements of a construction negligence claim, without any supporting facts. (*See* Mem. Op. & Order at 10–11, Dkt. No. 62.) Moreover, Gammons's conclusory allegations regarding Verizon's coordination of the work being done on the cell tower did not suggest that Verizon supervised the work to the extent that P & D Antenna and its employees were not entirely free to do the work in their own way. (*See id.*) The allegations in the amended complaint are nearly identical to the conclusory allegations in the first complaint with the following relevant additions:

> Verizon contracted with P & D Antenna to perform cell site construction on the tower. (*See* Am. Compl. ¶ 3 of Count III, Dkt. No. 68.)
>
> As an employee of P & D Antenna, Gammons was required to climb the cell tower to perform cell site construction pursuant to the terms of the contract between P & D Antenna and Verizon and was not entirely free to perform the work in his own way. (*See id.* ¶¶ 4–5 of Count III.)
>
> In performing the cell cite construction, Gammons was required to report to Verizon regularly. (*See id.* ¶ 8 of Count III.)
>
> Verizon set forth the specific tasks to be performed on the tower and the time frame in which they were to be performed and required P & D Antenna to participate in weekly meetings regarding the cell site construction. (*See id.* ¶¶ 9–10 of Count III.)

Gammons's bare conclusion that he was not entirely free to perform the work in his own way, standing alone, would not allow this claim to proceed. The question is whether the facts alleged in support of that conclusion, taken together, plausibly suggest that Verizon retained sufficient control of the cell cite construction to subject it to liability for construction negligence.

A number of the facts alleged in the amended complaint suggest that Verizon had no more than a general right to inspect the work being done, receive reports, or make suggestions or

13

recommendations. That Gammons may have been required to report to, and P & D Antenna required to participate in periodic meetings with, Verizon does not necessarily mean that P & D Antenna and its employees were not free to do the work in their own way. Nor does the allegation—included in both the original and amended complaint—that Verizon was present or had a duty to be present during the course of the work. The allegation that Verizon set forth the specific tasks to be performed and the time frame in which they were to be performed is a closer call, but Gammons still does not allege that Verizon controlled *how* those tasks were to be performed. Nevertheless, that allegation, taken together with some of the other allegations in both the original and amended complaints—that Verizon participated in coordinating the work being done, designated various work methods, and had the authority to order changes in the work— nudges Gammons over the line between possibility and plausibility of entitlement to relief. *See Twombly*, 550 U.S. at 557. In addition, the facts alleged suggest that Gammons was required by Verizon to climb the cell tower without fall-protection gear, which presumably is not how he would have chosen to do it. In other words, Verizon's alleged failure to provide the necessary safety equipment meant that Gammons was not free to do the work in his own way (*i.e.*, with safety equipment).[12]

---

[12] Verizon contends that its contract with P & D Antenna unambiguously establishes that it did not control Gammons's work on the cell tower, as is states that P & D Antenna was to be solely responsible for all construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the work. In support, Verizon cites *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d at 527, for the proposition that the best indicator of whether a contractor has retained control over the subcontractor's work is the parties' contract. Verizon's argument fails for a number of reasons. First, the parties disagree about what the contract means in terms of the extent of Verizon's control over the work, and, as stated in its previous memorandum opinion and order, the Court does not agree that the contract incontrovertibly supports Verizon's position. (*See* Mem. Op. & Order at 11 n.7, Dkt. No. 62.) Second, even if the contract is the best indicator of control, it is not the only indicator. *Wilfong* was decided at the summary judgment stage and other evidence (or the lack thereof) was taken into account. Further, Verizon's argument that level of control is a question of law does not advance the ball. Just as with the general duty analysis, the control analysis involves questions of fact inappropriate to be explored at the motion to dismiss stage before Gammons has had the opportunity to obtain discovery to determine the degree of control actually exercised. Finally, contractors do not always abide by the terms of their contracts. *See Downs v. Steel &*

Therefore, Gammons has adequately alleged that Verizon had a duty to provide him with a safe workplace. Elsewhere in the amended complaint, Gammons alleges that Verizon knew or should have known that common industry practice requires safety cables, safety connections, or climbing pegs on cell towers for the safety of individuals hired to perform cell-site construction, and that Verizon should have known that omitting or removing such equipment would make the cell tower difficult and dangerous to climb for those individuals. *See Rich v. Quad/Graphics Printing Corp.*, No. 11 C 7656, 2014 WL 5835623, at *7 (N.D. Ill. Nov. 10, 2014) ("To show duty of care, a plaintiff must show that the general contractor had actual or constructive knowledge of unsafe work methods or a dangerous condition.") (citing *Cochran v. George Sollitt Constr. Co.,* 832 N.E.2d 355, 365–66 (Ill. App. Ct. 2005)).[13] Gammons further alleges that in failing to provide fall-protection equipment, Verizon breached its duty to exercise control over the cell-site construction with reasonable care. Without such equipment, Gammons was unable to secure his harness to the cell tower, which caused him to fall and sustain injuries. These allegations plausibly suggest that Verizon is liable for construction negligence.

---

*Craft Builders, Inc.*, 831 N.E.2d 92, 99 (Ill. App. Ct. 2005) ("Although we conclude that the contract did not grant defendant sufficient control over [the] work to create a duty to plaintiff, our analysis of section 414 does not end there. It is possible that a duty to a subcontractor's employee may be created by the contractor's actions undertaken in contravention of, or in the absence of, an agreement.").

[13] Contrary to Verizon's position, Gammons need not provide detailed factual allegations of *why* Verizon should have had such knowledge. Verizon also asserts that Gammons has failed to plead facts establishing the origin of the alleged industry practices and who is responsible for meeting them in situations where there are multiple parties involved. Such detailed factual allegations are not required, and Gammons has adequately alleged that either Crown Castle, Verizon, or both were responsible for meeting the standards.

## CONCLUSION

Overall, this time around Gammons has adequately elucidated the basis for the duty allegedly owed to him by Crown Castle and Verizon, how those defendants allegedly breached that duty, and how that breach allegedly caused his fall. Thus, for the reasons stated above, Defendants' motions to dismiss (Dkt. Nos. 73, 76) are denied.

ENTERED:

Dated: January 24, 2017

Andrea R. Wood
United States District Judge