IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD GAMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-02310 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| CROWN CASTLE USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Todd Gammons was a communication tower worker assigned to work on equipment located on a cellular tower owned by Defendant Crown Castle USA, Inc. ("Crown Castle"). While attempting to climb the tower, Gammons slipped and fell to the ground, injuring his right foot. Gammons subsequently filed the present lawsuit, bringing tort claims against Crown Castle and the owner of the equipment on which he was working at the time of his fall. Crown Castle now moves for summary judgment on both claims against it, arguing that it owed Gammons no duty of care. (Dkt. No. 135.) For the reasons that follow, Crown Castle's motion is granted.

### BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] At all times relevant to this action, Gammons was a communication tower worker for third-party Defendant P&D Antenna Services, Inc. ("P&D Antenna"). (Def.'s Statement of Material Facts ("DSMF") ¶¶ 2–3, Dkt. No.

---

[1] Crown Castle's Statement of Material Facts consists of 63 numbered paragraphs. However, in his response to the Statement of Material Facts, Gammons only responds to four of those paragraphs. Under Local Rule 56.1, Gammons was required to respond to each numbered paragraph and his failure to controvert or otherwise respond to the remaining paragraphs is deemed an admission of the facts therein. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

137.) On February 13, 2014, P&D Antenna assigned Gammons to address a possible malfunction of telecommunication equipment on a cellular tower located at 929 North Christiana Avenue in Chicago, Illinois. (*Id.* ¶¶ 4–5, 20.) Crown Castle owned the steel components comprising the tower and leased space on the tower to the owner of the equipment, Defendant Verizon Sourcing, LLC ("Verizon"). (*Id.* ¶¶ 4–5.)

P&D Antenna contracted with Crown Castle to perform various operations, maintenance, and repair work on Crown Castle's towers. (*Id.* ¶¶ 8–9, 19.) Pursuant to the General Construction Services Master Agreement ("Master Services Agreement") governing their relationship, Crown Castle disclaimed any responsibility to monitor "Elevated Work," defined as "any work over six feet (6') above ground level," done by P&D Antenna's employees or agents. (*Id.* ¶¶ 9–10.) In addition, P&D Antenna acknowledged that it was aware of the "inherent danger" of climbing or working above ground level" and agreed to "implement all procedures and take all measures necessary to ensure" that only P&D Antenna employees who have been properly trained as qualified climbers would climb Crown Castle's towers. (*Id.* ¶¶ 11–12.) The Master Services Agreement specifically required qualified climbers to have received training as to several topics, including: "[t]he nature of fall hazards in the work area;" "[t]he correct procedures for erecting, maintaining, disassembling, and inspecting the fall protection systems used;" "[c]limbing safety procedures;" and "[t]he use and operation of the fall protection systems utilized by [P&D Antenna]." (*Id.* ¶ 12.)

Like all employees of P&D Antenna, Gammons was required to receive instruction, training, and certification in cellular tower safety and climbing techniques. (*Id.* ¶ 13.) As part of that training and instruction, Gammons learned that it was improper and unsafe to climb cellular towers without using safety harnesses, safety cables, or other proper safety equipment. (*Id.* ¶ 14.)

2

P&D Antenna also trained Gammons that climbing towers carried with it the risks associated with gravity, and therefore he needed to take appropriate precautions to eliminate those risks. (*Id.* ¶ 15.) In addition, Gammons was aware of P&D Antenna's policy allowing its employees to refuse a work assignment when they encountered a potentially dangerous situation that could cause harm to themselves or their co-workers. (*Id.* ¶¶ 17–18.)

When Gammons first reported to the cellular tower at 929 North Christiana Avenue, he observed that the tower did not have safety cables or climbing pegs. (*Id.* ¶ 21.) Gammons was accompanied by his co-worker. (*Id.* ¶ 47.) The two discussed the lack of safety cables and climbing pegs on the tower prior to any attempt to climb it. (*Id.* ¶ 48.) It was not uncommon for P&D Antenna's employees to deal with cellular towers that did not have safety cables or climbing pegs that extended all the way to the ground. (*Id.* ¶¶ 38–39.) As part of their training, P&D Antenna's employees were able to find remedies to such hazardous situations. (*Id.* ¶ 40.) And there were several ways that P&D Antenna employees could ascend cellular towers that did not have climbing pegs or safety cables accessible at ground level. (*Id.* ¶ 41.) For example, an employee could use one of P&D Antenna's bucket trucks to ascend to the point on the tower where climbing pegs or safety cables started. (*Id.* ¶ 42.) Moreover, P&D Antenna makes available to its employees spare climbing pegs that they can install on a tower before climbing it. (*Id.* ¶¶ 43–44.)

Despite lacking proper safety equipment, Gammons proceeded to climb the tower. (*Id.* ¶¶ 24–28.) The decision to climb the tower without using any safety equipment was made entirely by Gammons. (*Id.* ¶ 55.) While Gammons felt compelled to climb the tower immediately in order to fulfill his employment obligations, P&D did not impose a timetable on its employees to complete their jobs and did not apply any other form of pressure on its employees to complete

their assignments quickly. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRSMF") ¶¶ 35, 55, Dkt. No. 154; DSMF ¶¶ 60–62.) Gammons used the "X" rack on the tower's base to make his first climb and successfully climbed up and down the tower without a problem. (DSMF ¶¶ 31–33.) During his second climb of the tower, however, Gammons lost his grip on the "X" rack and fell approximately fifteen to twenty feet to the ground. (*Id.* ¶ 34.) Gammons sustained an injury to his right foot during the fall. (*Id.*)

## DISCUSSION

Crown Castle seeks summary judgment in its favor as to the premises liability and negligence claims Gammons has brought against it. Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). This is a diversity action, and neither party disputes that Illinois law governs the claims.

For both the negligence and the premises liability claims, Gammons must establish "the existence of a duty owed by the defendant to the plaintiff, breach of that duty, and an injury proximately caused by that breach." *Clifford v. Wharton Bus. Grp., LLC*, 817 N.E.2d 1207, 1212 (Ill. App. Ct. 2004) (citing *Ward v. Kmart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). Crown Castle argues that it should be granted summary judgment because it owed no duty to Gammons. Whether a defendant owed a plaintiff a duty of care is a question of law to be determined by the Court. *Id.* at 1213. In determining whether a defendant owes a plaintiff a duty of care, courts consider four factors: "(1) the foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden on the defendant of guarding against the injury; and (4) the consequences

4

of placing the burden on the defendant." *Id*. (citing *Deibert v. Bauer Brothers Constr. Co.*, 566 N.E.2d 239, 243 (Ill. 1990)).

In Illinois, "a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition." *Deibert*, 566 N.E.2d at 242. However, Illinois courts recognize the "open and obvious doctrine," which provides that "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014). While the open and obvious doctrine does not absolve courts from applying the traditional duty analysis, it does implicate the foreseeability and likelihood of injury factors of the analysis. *Id.* at 690. Height is considered an open and obvious condition, such that "the law generally assumes that persons who encounter th[is] condition[] will take care to avoid any danger inherent in such condition." *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996).

Yet "the existence of an open and obvious condition is not a *per se* bar to a finding of legal duty on the part of a premises owner or occupier." *Sollami v. Eaton*, 772 N.E.2d 215, 223 (Ill. 2002). Indeed, there are two exceptions to the open and obvious doctrine. Relevant here is the "deliberate-encounter exception," which applies in circumstances where the landowner should "expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 448 (Ill. 1998). Most commonly, the deliberate-encounter exception applies in circumstances "involving some economic compulsion, as where workers are compelled to encounter dangerous conditions as part of their employment obligations." *Lucasey v. Plattner*, 28 N.E.3d 1046, 1057 (Ill. App. Ct. 2015) (internal quotation marks omitted). "The focus with the deliberate-encounter analysis is on what the possessor of land

5

anticipates or should anticipate the entrant will do." *Id.* (internal quotation marks omitted); *see also LaFever*, 706 N.E.2d at 448 ("[W]ith regard to open and obvious hazards, liability stems from the knowledge of the possessor of the premises, and what the possessor had reason to expect the invitee would do in the face of the hazard." (internal quotation marks omitted)).

Gammons does not dispute that the tower presented an open and obvious danger. Nonetheless, he argues that Crown Castle should have anticipated that a communication tower worker such as himself would deliberately encounter the danger to do his job. But the evidence presented here does not show that Crown Castle should have anticipated Gammons deliberately to encounter the risk. Pursuant to the Master Services Agreement, Crown Castle had every reason to expect that only trained P&D Antenna employees would be climbing the tower and that, by virtue of that training, the employees would be knowledgeable in climbing safety and fall protection. It is undisputed, moreover, that P&D Antenna employees were trained that it is unsafe to climb cellular towers without safety equipment. Given that training, Crown Castle had no reason to expect that Gammons would climb the tower without taking appropriate precautions.

Nor was there any economic compulsion for Gammons to undertake the work assignment immediately instead of taking time to take appropriate precautions so that he could safely climb. Indeed, P&D Antenna had no policies that placed pressure on Gammons to complete his work assignment quickly. Thus, Gammons could have asked for a bucket truck to come and lift him to the point of the tower where the climbing pegs began. Or he could have returned back to P&D Antenna's office to retrieve spare climbing pegs to install on the tower. Moreover, P&D Antenna made clear to its employees that they could refuse a work assignment that they believed to be excessively dangerous. Despite the multiple options available to Gammons to complete the job safely, he decided to climb the tower without any safety precautions because "he felt compelled to

6

do so in order to fulfill his employment obligations." (PRSMF ¶ 35.) But Gammons's subjective belief is not relevant to the deliberate-encounter analysis, as it is focused on the reasonableness of the landowner's actions, not those of the invitee. *See LaFever*, 706 N.E.2d at 448. Based on all the information available to it, Crown Castle had no reason to expect that Gammons would opt to abandon safety measures to complete his assignment quickly rather than use the time afforded to him by his employer to perform the job in a safe manner.

Gammons claims that the facts in this case are the same as in other cases where Illinois courts have applied the deliberate-encounter exception. In particular, he relies on *LaFever* and *Preze v. Borden Chemical, Inc.*, 782 N.E.2d 710 (Ill. App. Ct. 2002), to claim that the deliberate-encounter exception applies whenever an invitee must encounter the danger to fulfill his employment obligations. That, however, is an overly broad reading of the two cases. Instead, as an Illinois Appellate Court observed, those two cases "involve[d] a plaintiff forced to make a choice between either facing the danger or neglecting his duties." *Lucasey*, 28 N.E.3d at 1057. In *LaFever*, the plaintiff's job was to dispose of waste, and to properly dispose the waste the plaintiff had to traverse a slippery surface. The *LaFever* court found that the landowner knew that the plaintiff "inevitably encountered" the open and obvious condition in order to perform his job and could also foresee that the plaintiff felt economic compulsion to perform the work he was hired to do. *LaFever*, 706 N.E.2d at 449. Similarly, in *Preze*, the plaintiff was doing maintenance work in a resin manufacturing plant when he slipped and fell on a resin-coated ladder. Given the fact that resin coated everything in the factory, the *Preze* court found that the plaintiff "had no choice but to encounter resin in [the] plant because if it was in the building, it had resin on it." *Preze*, 782 N.E.2d at 716. Thus, those cases are inapposite to the facts here, where Gammons had several choices available to him to climb the tower safely. And while those alternatives would have added

7

to the time to complete the job, the assignment was not time-sensitive and Gammons would have faced no negative repercussions for taking his time.

The Court therefore concludes that the open and obvious doctrine applies. Consequently, the foreseeability and likelihood of injury factors of the duty analysis weigh against imposition of a duty. *Bruns*, 21 N.E.3d at 690 ("Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty."). As to the other two factors, the Court finds that the magnitude and consequences of placing the burden of guarding against injury on Crown Castle also weighs against imposing a duty. Indeed, Crown Castle contractually disclaimed any responsibility to monitor the work of P&D Antenna employees or verify their training. Crown Castle was justified in relying on P&D Antenna's representation that its employees were properly trained and prepared to safely encounter the dangers inherent in climbing cellular towers. *See Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 975 (7th Cir. 2011) (finding that "it would be more efficient for business invitees" to follow their training than to place a burden on landowner to guard invitees against falls). There is simply no reason to reallocate the burden to Crown Castle when P&D Antenna already trains its employees to handle the open and obvious dangers associated with climbing cellular towers.

Both parties agree that the height of the cellular tower was an open and obvious condition. And because Crown Castle had no reason to expect that Gammons would disregard his training and climb the tower in an unsafe manner, the deliberate-encounter exception does not apply. Considering all four factors of the traditional duty analysis, the Court finds that Crown Castle owed no legal duty to Gammons. With no duty owed, Crown Castle cannot be liable on the

8

negligence and premises liability claims as a matter of law. Therefore, the Court grants Crown Castle summary judgment in its favor as to Gammons's negligence and premises liability claims.

## CONCLUSION

For the foregoing reasons, Crown Castle's motion for summary judgment (Dkt. No. 135) is granted.

ENTERED:

Dated: March 13, 2019

Andrea R. Wood
United States District Judge